King, J.
The defendant in error, the plaintiff below, brought his suit in the court of common pleas, to recover the sum of about $1,782.00, which, it was claimed, defendant had and held in his hands belonging to the plaintiff, refusing to pay it over when demanded.
The defendant in his answer denied all the allegations of the plaintiff’s petition,and set up in defense that certain claims had been placed in his hands for collection, by a firm called Cray & Rood; that he had collected and disbursed the money collected from these claims amounting to something over ten thousand dollars, pursuant to their instructions, excepting that he still held $1,782.00 which he *590 claimed as due him, at least that sum, as his reasonable compensation for his attorney fees and expenses incurred in collecting and disbursing this money. This answer I have not quoted in all of its terms, but the part of the answer, or particular defense setting this up concluded with the allegation that the plaintiff was estopped from claiming any part of the money in question.
There was a motion to strike out this particular defense, which was overruled. A demurrer was then filed to it, and that was overruled, to which the plaintiff excepted. A reply was then filed within time; the case went to trial to a jury, which resulted in a general verdict for the defendant.
A considerable portion of the able argument for the plaintiff in error is directed to what he claims is error of the court in overruling the motion and demurrer, and is based upon the theory that there was nothing in the case, or facts, involving the doctrine of estoppel. Considerable of the argument advanced by counsel for plaintiff in error, no doubt, is well reasoned and well stated; but, after all, it need not by us be considered seriously, for two reasons: (1), on the trial of the case the court instructed the jury to disregard this defense, so the plaintiff was not prejudiced by the action of the court for refusing to strike it out earlier in the case; (2), the averment in this part of the answer that plaintiff is estopped, is a mere legal conclusion, and amounts to nothing. We think that so much of this so-called defense as states facts is material to the issue in the case, and that the court should have overruled the motion and demurrer; and if the court committed any error it was in instructing the jury to disregard this defense. While this so-called defense might have been more artistically or properly stated,yet it was a defense, and should not be overruled.
There were many exceptions taken in the course of the trial to the introduction of evidence. We pass these by, saying that we think there was no error in the ruling of the court as to the admission and rejection of evidence, prejudicial to the plaintiff in error. A great deal of evidence was taken in the case, and much,no doubt, was finally found to be immaterial; and yet the matters were somewhat involved, and on the trial the court could not well tell which *591 of the evidence^would be material and proper, and which would not.
The case is somewhat peculiar. Cray & Rood was a firm, composed of two persons whose names constituted the firm name. Rood was the principal manager, and talked for the firm. He had, for some years before, been connected with the plaintiff corporation, and at the time of this transaction was its president, if it had any. Several years before the transactions involved in this case, the corporation had sold all of its property to another, at least all of its tangible property. Rood was also connected with another corporation, called the Fostoria Light & Power Company, of which he was also president. Rood acted for the firm of Cray & Rood, and, knowing his insolvency and the insolvency of the firm, gave certain cognovit notes to persons to whom the firm was indebted, and preferred them as creditors, and directed the attorney of the firm to have judgments taken on these notes and levies made upon the property of the firm. He also, and in anticipation of these judgments and levies, took the book accounts belonging to the firm and bills receivable away from the place of business of the firm. These amounted to quite a sum, and he transferred or caused them to be transferred by written assignments, part to the Fostoria Light & Power Company and part to the plaintiff in error. Rood was the only person who acted, either for the firm or for either one of these two corporations, He made a list of these accounts; he wrote the assignments thereon to each of the corporations in question, or he procured it to be done. This was done with the knowledge of Cray, his co-partner, who seems, however, to have taken no further interest in the transactions. The business was transacted by Rood, and so far as any one of these persons or corporations was present or represented by any living person, Rood was that person. . He was the assignor, and the assignee in fact. He claimed that the firm of Cray & Rood was indebted to these corporations.
It is very difficult from this mass of testimony to ascertain what the fact is with reference to that. We cannot tell whether the firm of Cray & Rood was indebted to these corporations or not. But assuming^that it was, the corporations were represented by Rood, and nobody ■ else. He *592 planned this scheme. He placed these accounts and bills receivable, personally, in the hands of the defendant, with instructions to collect the accounts and bills receivable and disburse the money upon his order. The defendant collected the accounts and bills receivable and paid the money out. He paid out the proceeds as Rood directed. Nota dollar is shown to have been paid out except by the direction of Rood,
Another peculiarity of this transaction is that they were not paid out to the corporations to whom they had been assigned, as shown by the checks, receipts and orders given. But a large part of this money was paid to the persons to whom Rood directed it to be paid, other than these corporations, and actually some of it was paid to Rood himself, or paid out to pay his individual debts and liabilities. The whole transaction, as conducted from beginning to end, indicates that it was a scheme of Rood to put these claims beyond the reach of the creditors of Cray & Rood, so that they might not be taken in any manner by levy or otherwise,and subjected to the payment of the creditors of Cray & Rood; and that, having gotten them from under the dominion of Cray & Rood, he then proceeded to take the proceeds and use them as he pleased.
It is claimed here that the plaintiff had no contract with Greer, by which Greer would have a right to charge it for collecting these claims, and that it might come here and sue Greer for the amount he still holds in his hands, because it had never employed him to do this work. It is true that the plaintiff expected that Greer should have something for his compensation, but insists upon the right to fix the amount of fees he should have It demands that he should accept something like $200.00 for his services, and agrees that this should be the sum recovered.
We think the jury decided this case correctly. It might be conceded that Greer rendered the services in these matters, conducted the .amount of business he claims — and whibh is not seriously disputed by the plaintiff — and the amount claimed by him as compensation is not shown to be unreasonable. But plaintiff states and insists that these services were rendered to Cray & Rood, and Cray & Rood must pay for them. This is certainly an anamolous sitúa *593 iion and position so far as these transactions are concerned.
Mr. Greer knew nothing about the plaintiff except he knew that nominally these accounts had been assigned to it. He knew nothing further than what he was told by Rood that they had been assigned, as he was instructed himself to transfer them, and that they were a part of those owned by the plaintiff. But he also knew that after the assignment and the transfer had been completed, that Rood, and no one else, represented the plaintiff and controlled the disbursement of this money as effectually and completely as if Rood had been the sole owner of it, For all practical purposes he might as well have received all of it from his attorney or agent as the part which he did receive. Rood ■did not undertake to separate or cause to be' separated the proceeds of the accounts assigned to the plaintiff from those assigned to the Fostoria Light & Power Company, except incidentally, and those proceeds from the different claims that were collected were controlled by him; and, in effect, were owned by him, and so treated.
It is seriously disputed by the defendant in error that the plaintiff was the owner of these claims, or that Cray & Rood was indebted to it. We do not undertake to unravel that entanglement from the peculiar system of book-keeping which was instituted and carried on by Rood for and on behalf of this corporation. It is enough to say that the view which the jury took of this matter is the practical good sense view of this transaction. Looking upon the whole ■transaction as conducted by Mr. Rood, it is plain that he, to all practical purposes, was the owner, buyer, seller, assignor and assignee. He directed what should be done, how it should be done, and when it should be done, and to whom the results should all accrue. Hence the jury might well have found that the plaintiff had no interest in these accounts. If they could have found that, they were clearly justified in finding that the defendant had a lien upon the money collected from these accounts for his services. Having received his orders from Rood,and Rood being the only living person in authority, he was justified in paying his attorney from the proceeds of the collections. And when the moneys were distributed upon Rood’s order, the defendant had a right to say as he did say: “The balance I will hold *594 until I receive pay for my services or until the amount of my compensation is agreed upon.” When that point was reached, the corporation steps in and says that Rood has no authority to settle with Mr. Greer for his services. The corporation was good enough to receive the assignment of these claims through the agency of Rood alone, but when the time came for the corporation to pay for the services rendered by Mr. Greer, then the agency of Rood seems to have terminated and ceased. We do not think the jury were called upon to treat his agency as terminated in that manner,or his authority to act for this company concluded. This, company had no other living representative so far as disclosed by this mass of testimony. Rood remained the agent, if he ever had been, and if agent, he had authority to pay the agent he had hired, and if he was not the agent, then the corporation never acquired any title to this fund,
J. W. & W. F. Brown, for Plaintiff in Error.
W. S. Thurstin, for Defendant in Error.
We think the verdict of the jury is correct, so that the judgment is affirmed.